

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**01/15/2014**

| | | |
|---|---|---|
| IN RE: TODD WAYNE TAYLOR | § | |
| TIFFANY WIGNALL TAYLOR | § | |
| | § | |
| DEBTOR(S) | § | CASE NO. 11-39092-11 |
| UPFRONT SERVICES, LLC. | § | |
| SUSAN DANNA, DON THUROW | § | |
| MARY SWINDALL, | § | |
| PATRICIA KAYE | § | |
| AND JOSEPH KAYE | § | |
| PLAINTIFF(S) | § | ADVERSARY NO. 12-03218 |
| | § | |
| VS. | § | |
| TODD WAYNE TAYLOR | § | |
| TIFFANY WIGNALL TAYLOR | § | |
| | § | |
| DEFENDANT(S) | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**Jurisdiction:**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding.

**Findings of Fact:**

1. Plaintiffs are Upfront Services, LLC. ("UPS"), Susan Danna ("Danna"),

Mary Swindall ("Swindall") Don Thurow ("Thurow"), Patricia Kaye ("P Kaye") and

Joseph Kaye ("J Kaye").

2. Todd Wayne Taylor and Tiffany Wignall Taylor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on October 27, 2011. Ronald J. Sommers was appointed as Trustee.

3. Todd Taylor is an attorney licensed to practice law in the State of Texas. Todd Taylor and Tiffany Taylor are husband and wife.

4. On April 23, 2012 plaintiffs filed adversary 12-3218. Service was effected and the Taylors answered on June 8,2012.

**General Common Findings**:

5. All plaintiffs except Mary Swindall, were members of the Realty Investment Club of Houston (RICH). The expressed purpose of RICH was to educate its members about real estate investing. From time to time Todd Taylor participated in panel discussions conducted for the members of RICH on topics related to real estate investing. Between January 2008 and October 2009, the individual plaintiffs who were members of the RICH were solicited by promoters, Paul Jacobson, and Conrad Jacobson, and their associates (the Jacobson Group), to make loans to various apartment complexes owned by Conrad Jacobson for the stated purpose of refurbishing and repairing the complexes.

6. The Jacobsons are Utah residents, who have filed for bankruptcy protection under Title 11.

7. Paul Jacobson introduced Todd Taylor to the plaintiffs as the Jacobsons' lawyer, but, thereafter, Taylor himself confirmed Jacobson's representations about the proposed projects. Taylor personally reassured and encouraged plaintiffs to lend their money.

8. The apartment complexes involved were: three in Houston- Skylane West, Skylane Montrose, Skylane Midtown; two in Dallas- La Maison and Prairie Hill; two in San Antonio - Casa Royal and Glendora, Texas; and one in Oklahoma City, Oklahoma – Jeanetta.

9. Each apartment complex was owned and controlled by a separate corporate entity with its own bank account.  Taylor did not instruct plaintiffs to make their checks payable to the respective corporate entity which plaintiffs understood would receive their funds. Instead, in most instances Taylor told plaintiffs to make their checks payable to him personally or his IOLA account

10. Paul Jacobson and Todd Taylor lead plaintiffs to believe that each of their loans would used to refurnish specific apartment projects; each loan would receive a 12%-18% return; each loan would be second in priority behind the purchase money lender's first lien; and each loan would be secured by a promissory note and properly filed deed of trust.

11. Some plaintiffs received some interest payments on their loans, but no

plaintiff received a return of the principal amount loaned. Plaintiffs' loan documents, if Taylor sent them at all, were often delayed for months. Ultimately, what documents plaintiffs did receive showed plaintiffs' lien priorities behind numerous other liens already attached to the property. In some instances, the Jacobsons themselves had liens on the complexes filed after the primary lender, but prior in time to those of plaintiffs. Plaintiffs were not informed about the Jacobsons' liens.

12. None of the plaintiffs formally retained Todd Taylor as an attorney. None of the Plaintiffs are themselves attorneys or have any legal background.

13. All plaintiffs, except Swindall, relied on Todd Taylor's representations that he would produce and deliver the loan and security documents and their loans would be second liens next behind first lien of the primary lender.

14. Each Plaintiff transferred funds directly to Todd Taylor's control.

15. Each transfer was done at Paul Jacobson's and/or Todd Taylor's direction.

16. Todd Taylor deposited funds for Thurow, Danna, UPS, Swindall, P. Kaye, and J. Kaye into Taylor's Compass Bank IOLTA Account No. 0022083287("IOLTA Account). Todd Taylor had sole control of his IOLTA trust account

17. Todd Taylor also directed UPS, Danna, and Swindall to deposit funds into Guardian Fidelity Title Company. Those funds ultimately were transferred to Todd

Taylor's IOLTA Account.

18. TWT Mortgage Group, LLC (TWT Mortgage), is a company owned and managed by Todd Taylor.

19. Taylor also inserted himself on the deed as trustee for various plaintiffs' loan. No plaintiff authorized Taylor to act as "trustee" on any security agreement or deed of trust. No plaintiff knew Taylor intended to list himself as trustee regarding plaintiffs' loans.

20. As to the Houston complexes, the respective plaintiffs' loan monies were not used to upgrade or refurbish the apartments as Taylor and Paul Jacobson represented.

21. The apartments were ultimately foreclosed and all plaintiffs lost the principal of their loans.

22. Between 2008 and 2009 the following investments have occurred:

**Don Thurow:**

a. On January 22, 2009, at the direction of Paul Jacobson, Don Thurow (Thurow) met with Taylor at his law office. Taylor told Thurow to make Thurow's check for $50,000 payable to the Law Offices of Todd Taylor. Taylor deposited the check into his IOLTA Account (P. ex. #105).

b. When Thurlow asked why the check was not made payable to the Glendora

Apartments, Taylor said he himself would hold the funds and "parcel them out to the suppliers and contractors as the work progressed." (Tr. p.22).

c. When Thurlow asked about the loan documents, Taylor said they were not ready. Consequently, Thurlow refused to give Taylor the check and got up to leave Taylor's office, saying "when they are ready call me." (Tr. p.24) Taylor then gave Thurlow a "sales pitch." Taylor explained that Thurlow may not get a chance to have such a wonderful opportunity in the future. Finally, Taylor convinced Thurow to give him Thurlow's $50,000 check as a loan to the Glendora Apartments in San Antonio.

d. The next day, January 23, 2009, Taylor issued a $50,000 check to the Skylane Apartments West, LLC in Houston, Texas. (P. ex. #40).

e. Thurow only authorized his loan monies to be paid to the Glendora Apartments in San Antonio, Texas.

f. Three months later Thurow received copies of some but not all necessary security documents. There is no evidence that Taylor properly filed a deed of trust showing Thurow's loan. The Court finds that Taylor is not credible and that he did not file a deed of trust showing Thurow's loan.

g. Taylor told Thurlow that his loan would be secured by a second lien position behind only the purchase money lender. In fact, Thurow's loan was subordinate to other additional liens.

h. Thurlow received one interest payment of $1,000, reflecting two months rent. Thurlow never received his principal of $50,000.

I. Thurow relied upon Todd Taylor's representations which  proximately caused Thurow's damages.

j. Thurow suffered damages in the amount of $50,000.00.

**Susan Danna**:

23.   From May 2008 to August 2009, Danna, a  pharmacist, made seven different loans, totally $148.231.80, to Todd Taylor and the Jacobson  apartments.

a. On one occasion, Danna met with Paul Jacobson and Todd Taylor at the Skylane apartments in Houston. On more than two occasions, Danna also met with Paul Jacobson and Todd Taylor for lunch. The purpose of these meetings was to discuss the Jacobsons' needs for loans in order to refurbish the Jacobsons' apartments. (Tr. p. 66)

b. In May 2008 Danna met with Todd Taylor at Taylor's office to make her first loan to the Skylane Apartments. Danna's loan monies came from Danna's retirement fund at PENSCO Trust Company.  Taylor explained to Danna how to complete the necessary forms to allow Danna to draw $53,000 from two retirement accounts in the amounts of $40,000.00 and $13,000,00. (P. ex.#68, p.6 &7) payable to Guardian Fidelity Title Company. Taylor lead Danna to believe that he was

representing her and her interests regarding the Jacobson's deals.

c. Danna was told that her loan position would be second behind the purchase money lender and Danna understood that the apartments were sound "investments," with high occupancy, and good management. (Tr. p. 74)

d. Before Danna made her second loan on November 17, 2008, Taylor reassured Danna that the apartments were sound investments. (Tr.p. 74). Thereafter, Danna gave Taylor a $20,000 check as a loan to the Skylane West Apartments in Houston. (P. ex. #68, p.4). At Taylor's direction, Danna made the check payable to Taylor personally.

e. On the third loan made on November 24, 2008, Danna gave Taylor another $20,000 for the Oklahoma Jeanetta Apartments, LLC. (P. ex. #68, p. 5). Taylor again directed Danna to make the check payable to Taylor personally.

f. On the fourth loan made on December 12, 2008, Todd Taylor directed Danna to transfer $33,000.00 from her Entrust Retirement Services account to Taylor's IOLTA account at Compass Bank. (P. ex. #68, p. 10).

g. On the fifth loan made on April 9, 2009, Danna made an $11,000.00 check payable to Todd Taylor and also gave him $4,000.00 in cash for the Skylane and Glendora apartments.

h. Danna received interest on her May 2008 loans of $5,441.85 and $1,790.01

which Paul Jacobson deposited to her retirement fund, PENSCO Trust Company. However, thereafter, Danna reloaned these monies to the apartment projects. Taylor never sent Danna a note or deed of trust showing these additional loans. Thereafter, Danna received no more interest payments.

I. Todd Taylor misrepresented that Danna's loans would enjoy lien positions second only to the first lien primary lender.

j. In June 2008 Taylor sent Danna a special warranty deed with vendor's lien for the Skylane Midtown apartments, 219 W. Alabama St. Houston showing Enterprise Bank as first lien note holder for $1,313.709.00. The second lien lists Taylor as trustee regarding a note for $309.944.62 payable to the Houston Skylane One, LLC, a company owned by the Jacobsons. The deed lists the third place lien note as payable to Danna's Pennsco accounts along with five other individual lenders on a note for $342,000, secured by an third and inferior vendor's lien and third-lien deed of trust. (P. ex. #70). There is no evidence that Taylor filed a deed of trust showing Danna as lender.

k. Todd Taylor made material false statements to Danna regarding her note and lien position. He intended that Danna rely on his representations and she did. Todd Taylor approximately caused her damages.

l. Danna was never repaid her principal.

m. After numerous meetings with Taylor, Danna went to Taylor's office to get his help regarding her retirement accounts with Pensco which were showing incorrect figures regarding the $53,000 loan to the Jacobsons. Taylor telephoned Pensco on behalf of Danna, explaining that he was a lawyer. Taylor resolved the confusion with Pensco and helped Danna avoid problems with the Internal Revenue Service regarding her retirement accounts. (Tr.p. 93).Once gain, Danna was lead to believe that Taylor was acting as her lawyer.

**Upfront Services, LLC**:

24. Upfront Services, LLC. (UPS), through its manager, Steve Sheppard, made four loans to the Jacobsons' projects at the direction of Paul Jacobson and Todd Taylor.

a. On June 4, 2008, UPS paid $137,000.00 to Guardian Fidelity Title Company pursuant to Todd Taylor's directions for the Skylane Montrose and Skylane Midtown apartments. (P. ex. #46).

b. Taylor told Sheppard that each UPS/ Sheppard loan would enjoy a second lien position behind only the first lien mortgage and the loans would be used for upgrades to the apartments.

c. Later in June 2008, Steve Sheppard received a Deed of Trust and Security Agreement for the Skylane Montrose and Skylane Midtown properties which showed

Todd Taylor as trustee for a note held by Sheppard and six other lenders, totaling $342,000. This lender group's note is in sixth place priority, behind: (1) two tax-related liens ($55,793) owned by Tax-Ease Funding, LLC, (2) a third lien for $450,000 to Enterprise Bank;(3) a fourth lien to Enterprise Bank for $1,313,709; and (4) a fifth lien for $309,944.72 granted by Conrad Jacobson to Houston Skylane One, LLC, the Jacobson's corporation. (P. ex. #50).

    d. UPS received monthly interest payments from this loan of 12%.

    e. On December 29, 2008, UPS made two (2) loans of $45,000.00 each by way of one check for $90,000.00 payable to the Law office of Todd W. Taylor, PLLC. for the Casa Royale and La Maison Apartments. (P. ex. #46).

    f. On April 20, 2009, UPS loaned $ 75,000.00 payable to Todd Taylor, which was intended as additional monies for Sheppard's existing loan for Skylane Montrose, Skylane Midtown, and Skylane West. (P. ex. #46).

    g. Thereafter, Taylor sent Sheppard an Amended and Restated Promissory Note listing UPS as borrower and dated April 15, 2009, in the amount of $212,000. (P.ex.#48). Page 4 of this document states the Upfront note occupies a fourth lien position behind the Jacobsons' third lien note in the amount of $320,000. This new note would pay UPS a 15% interest rate. (Tr.p.197).

    h. UPS received interest payments on its loans until September 2009.

I. Todd Taylor made false representations regarding lien priority and rehabilitation purpose of the loans with the intent that Upfront and Sheppard would rely on his statements. UPS and Sheppard did rely on Taylor's statements with damages of $302,000.

**Mary Swindall:**

25. Mary Swindall made two completed loans from her retirement accounts to the Jacobsons' projects with the encouragement of Todd Taylor.

a. On May 18, 2008, Swindall sent a check for $100,000.00 with a notation that it was a loan for "Skylane, Montrose, and Southwest" apartments. (P. ex. 89). The money was wired to the account of the Law Office of Todd W. Taylor, PLLC. (P. ex. 92). However, Taylor drafted and sent Swindall documents which showed her interest secured by the Prairie Hill Apartments in Dallas, Texas. Swindall testified that her name did not appear on the note. (Tr.p.128). Taylor never sent Swindall a deed of trust related to this loan. (Tr. p. 132). The Court finds that Taylor did not file a deed of trust showing Swindall's interest in this loan.

b. Swindall did receive interest for one year on her first loan. (Id.). Consequently, on October 16, 2008, Swindall made another loan to one of the Jacobsons' apartment complexes. She wired $50,000.00 to Todd Taylor as a loan to the Skylane West Apartments, Houston, Texas. (P. ex. #89). Swindall received a

promissory note evidencing a subordinate fifth lien position. (D. ex. #34). She never received a deed of trust. Swindall received some interest payments on this loan, but other interest payments were returned marked "NSF." (Tr.p.132). The Court finds that Taylor never filed a deed of trust reflecting Swindall's $50,000 loan.

c. On March 19, 2009, Swindall wired $40,000.00 to the account of the Law Office of Todd W. Taylor, PLLC. for the Glendora Apartments in San Antonio, Texas. (P. ex. #88 and 94). Taylor sent Swindall a document titled, "Partial Transfer of Lien." (P. ex. #85). This document lists Mary Swindall as transferee of $157,000. Todd Taylor's company, TWT Mortgage Group, LLC., is listed as lender and holder of note and lien for which TWT transfers to Swindall a 24.478% or $40,000 interest in a lien against the Glendora Apartments in San Antonio. (P. ex. #85).A promissory note, also dated March 19, 2009, shows a lien in favor of Mary Swindall for $40,000.(P. ex.#86). She never received a deed of trust. Swindall never authorized Taylor or TWT Mortgage to act on her behalf as lender.

d. Taylor joined in the Jacobsons' representations to Swindall, by having Swindall's check or wire transfers made out to either him personally or his law firm. Taylor, by having his company, TWT Mortgage Group, listed as lender and holder of Swindall's note against the Glendora Apartments, participated directly in the Jacobsons' fraudulent schemes. The Court finds that Taylor failed to prepare and

record deeds of trust to protect Swindall's loans to the Jacobsons' complexes.

e. Swindall's loss of $190,000 was proximately caused by Taylor as a participant with the Jacobsons in their fraudulent schemes.

**Patricia Kaye:**

26. Patricia Kaye made two transfers from her Entrust Group retirement account to Todd Taylor.

a. On October10, 2008, Patricia Kaye authorized a transfer from her Entrust Group retirement account to Todd Taylor's IOLTA Account for a loan of $25,000.00 for the Skylane West Apartments, Houston, Texas. (D. ex. #35). Mrs. Kaye received a promissory note for $25,000 dated October 10, 2008, secured by the Trinity Apartments in Houston, Texas and real property owned by Oklahoma Meadow Creek LLC. in Oklahoma City, Oklahoma. (D. ex. #35). The note shows Mrs Kaye's lien to be in sixth place. Patricia Kaye never received a deed of trust from Taylor for this loan.

b. On February 13, 2009, Patricia Kaye authorized a transfer from her Entrust Group retirement account to Todd Taylor's IOLTA Account for a loan of $26,000.00 for the Glendora Apartments in San Antonio, Texas. (P. ex. #110). A deed of trust dated February 14, 2009, shows a first lien dated January 22, 2009 in favor of TWT Mortgage Group, LLC. for $219,000.00, a note for $26,000.00 dated February 13,

2009, in favor of Entrust Retirement Services, Inc. FBO Patricia Gilbert Kay IRA #11708-11, and a note dated February 14, 2009 for $5,000.00 in favor of Sloop John B II, L.P. (P. ex. #110). Todd Taylor is the trustee on this deed of trust. Todd Taylor owns TWT Mortgage Group, LLC.

    c. Todd Taylor misrepresented to Patricia Kaye that each loan she made would enjoy a second lien position behind only the first lien primary mortgage. The promissory note (D. ex #35) shows her loan in a subordinated fifth lien position. Taylor never told Mrs. Kaye that Taylor would be the trustee on the deed of trust or that Taylor's company TWT Mortgage Group held a superior lien position . (P. ex. #111).

    d. Todd Taylor made these false representations to Patricia Kaye intending that she rely on them. She relied on such misrepresentation and lost $51,000.

**Joseph Kaye**:

    27. On May 6, 2008, Joseph Kaye gave a check for $10,000.00 payable to Todd Taylor as a loan to the Skylane Montrose and Southwest Apartments. (P. ex.#116). Taylor told Kaye that the loan was protected by the value of the real estate and by the "great" management of the apartments themselves. (Tr. ex. 155).

    a. Joseph Kaye was subsequently re-paid $5,000.00 of the loan.

    b. Mr. Kaye testified he was eventually sent a note and a deed of trust

P:Upfront vs Taylor kkb 011414.wpd    15

evidencing this loan. (Tr. p. 158). Todd Taylor is listed as the trustee on the deed of trust.(P.ex.50).

c. Todd Taylor misrepresented that loan would enjoy a second lien position behind only the first lien mortgage. Kaye's loan was subordinated to four other obligations. (P. ex. 50).

d. Taylor participated in meetings with Paul Jacobson and potential lenders regarding possible loans to the apartments. At other times Taylor conducted the meetings alone. At these meetings Taylor emphasized to the potential lenders that the loans would be secure because the property values were high, the apartments were well managed and the occupancy rates were high. (Tr. p. 160). At no time did Taylor disclose, that he would act as trustee on a deed of trust despite the fact that he formally represented the borrowers, the Jacobsons. Mr. Kaye never authorized Todd Taylor to act as a Trustee on any deed of trust related to his loan.

e. Todd Taylor made false statements regarding Kaye's loan position intending Kaye rely on the representations. Mr. Kaye did rely on such misrepresentation and suffered damages in the amount of $5,000. proximately caused by Taylor.

28. In Fall and Winter 2009 and early 2010 Steve Sheppard personally inspected the three Houston apartment complexes and found that each complex was

P:Upfront vs Taylor kkb 011414.wpd          16

severely distressed. The properties were run down, in need of substantial exterior repairs as well as appliance replacement. Some apartment units were "red-tagged" by the City of Houston  Public Health department as uninhabitable.  Some units had dangerous natural gas leaks.  The Skylane West Apartments  had 25 of its 67 units which were not fit for occupancy. There were plumbing leaks and one of its two hot water heaters had not been repaired for one year. (Tr. pp. 213-18). The Court finds that there is no evidence that the loans were  used for rehabilitation of these apartment complexes.

**Conclusions of Law:**

29. The party opposing discharge has the burden of proving that a debt comes within one of the statutory exceptions to dischargeability. *Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir. 1987). The quantum of evidence necessary to sustain a statutory exception to dischargeability is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

30.The purpose of the discharge in bankruptcy is to protect the "honest but unfortunate debtor" and to give the debtor a fresh start. *Id.* at  287,  The court concludes as a matter of law that  Todd Wayne Taylor is not "honest but unfortunate debtor."

**Related to § 523(a)(2).**

31. For the purpose of non-dischargeability, actual fraud requires the creditor to prove that "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representation with the intention and purpose to deceive the creditor; (4) the creditor relied upon such representations; and (5) the creditor sustained losses as a proximate result of the representations." *In re Holdaway*, 288 B.R. 767, 773 (Bkrtcy. S.D. Tex. 2008)

**Don Thurow**:

32. Todd Taylor's statements to Don Thurow on January 22, 2009, that Thurow's monies would be spent on the Glendora Apartments, that the funds would be deposited into Todd Taylor's account in trust, that Todd Taylor would not distribute the money to any project other than the Glendora Apartments in San Antonio, Texas, that Todd Taylor would provide legal documents evidencing the debt and properly filed deed of trust , that Thurow's loan would be second only to the purchase money lien  were misrepresentations of material fact which Taylor knew at the time were false. Taylor made the statements to induce  Thurow to make the loan. Thurow relied to his detriment . Taylor proximately caused Don Thurow's damages in the amount of $50,000.00. Taylor's statements and actions  constituted actual fraud.

33. Don Thurow's debt of $50,000.00 is non-dischargeable pursuant to

§523(a)(2) as actual fraud.

**Susan Danna:**

34. Todd Taylor's representations that that Taylor would not distribute the money to any project other than the project designated by Susan Danna, that Taylor would provide legal documents and filed security agreements, that Danna's loans would hold a second lien priority position were misrepresentations of material fact. Taylor knew at the time such statements were false and were made to induce Danna into making the loans.

35. Susan Danna reasonably relied upon Todd Taylor's representations for the loans made in May 2008 for $40,000.00 and $13,000.00; on November 17, 2008, for $20,000.00; on November 24, 2008, for $20,000.00; and on December 12, 2008, for $33,000.00. Todd Taylor's statements conduct constitutes actual fraud.

36. Susan Danna's debt of $126,000 is non-dischargeable pursuant to 11 U.S.C. §523(a)(2) as actual fraud.

**Upfront Services, LLC:**

37. Todd Taylor's representations, that the funds would be deposited into Todd Taylor's account in trust, that Todd Taylor would not distribute the money to any project other than the project designated by Upfront Services, LLC ("Upfront"), that Todd Taylor would provide legal documents evidencing the debt and filed security

agreements, and Upfront's liens would be second in priority were representations of material fact made by Todd Taylor, known at the time by Todd Taylor to be false to induce into tendering the funds, Upfront relied to its detriment. On Taylor's statements and Taylor's proximately caused Upfront's damages in the amount of $302,000.00. Taylor's statement and actions constitutes actual fraud.

38. Todd Taylor's conduct constitutes actual fraud.

39. Upfront's debt of $137,000.00 is non-dischargeable pursuant to 11 U.S.C. §523(a)(2) as actual fraud.

**Mary Swindall:**

40. Todd Taylor's representations that he Taylor would provide legal documents and filed security agreements were representations of material fact made by Taylor, which he knew at the time were false. Taylor made the statements to induce Swindall into making the loans. Swindall relied on Taylor's statements to her detriment and Taylor proximately caused Swindall's damages.

41. Swindall did not receive loan documents for the May 17, 2008, $100,000.00 loan until late summer 2008.

42. Swindall reasonably relied upon Todd Taylor's representation for the loan made May 17, 2008, in the amount of $100,000.00. Todd Taylor's conduct constitutes actual fraud.

43. Swindall's debt of $100,000.00 is non-dischargeable pursuant to §523(a)(2) as actual fraud.

**Patricia Kaye**:

44. Todd Taylor's representations, that the funds would deposited into Todd Taylor's account in trust, that Todd Taylor would not distribute the money to any project other than the project designated by Patricia Kaye, that Todd Taylor would provide legal documents evidencing the debt and filed security agreements showing her loan is second in lien priority, were representations of false material facts made by Todd Taylor, known at the time by Todd Taylor to be false to induce into tendering the funds. Patricia Kaye relied to her detriment on Taylor's statements and Taylor's proximately caused Patricia Kaye's damages.

45. Patricia Kaye reasonably relied upon Todd Taylor's representation for the loans made the 10 October 2008 $25,000.00, and, the 13 February 2009 $26,000.00 loans in the amount of $51,000.00. Todd Taylor's conduct constitutes actual fraud.

46. Patricia Kaye's debt of $51,000.00 is non-dischargeable pursuant to §523(a)(2) as actual fraud.

**Joseph Kaye**:

47. Todd Taylor's representations that Kaye's loan would go to refurbish the Skylane Midtown Apartments and that the loan was secure due to the high property

values were representations of material facts made by Taylor. Taylor knew these were false. Joseph Kaye relied to his detriment on Taylor's statements which proximately caused Joseph Kaye's damages.

48. Taylor represented that Joseph Kaye's loan would be in second lien priority position behind the first lien mortgage. That representation was false and proximately caused Joseph Kaye's damages of $5,000.00. Todd Taylor's conduct constitutes actual fraud.

49. Joseph Kaye's debt of $5,000.00 is non-dischargeable pursuant to §523(a)(2) as actual fraud.

Related to 11 U.S.C. §523(a)(4). **Fiduciary Duty**

50. Debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny are nondischargeable. 11 U.S.C. § 523(a)(4).

51. "Fiduciary" is "construed narrowly, limited to 'technical trusts and to traditional fiduciary relationships involving trust-type obligations imposed by statute or common law. The existence of a fiduciary relationship for purposes of 11 U.S.C. § 523(a)(4) is determined under federal law. However, state law bears on whether a trust obligation exists. *In re Bennett*, 898 F.2d 779, 784-85, 787( 5th Cir. 1993).

52. The trust relationship must exist prior to any wrongful actions."The debtor must have been a trustee before the wrong and without any reference to it."

*Bennett*, 898 F2d at 789.

53. Plaintiffs allege a trust relationship was created by Taylor when he put their funds into his own name or into his IOLTA account, relying on V.T.C. Govt. Code T.2, Subt. G. App. A, Art.10, Section 9. Rule 1.14 which requires that lawyers put monies of their clients or from third-parties into a separate account, designated as a "trust" or "escrow" account.

54. Plaintiffs fail to site any authority for the proposition that giving an attorney money which is deposited in a trust account independently creates a trust relationship within the strict limitations of 11 U.S.C. §523(a)(4). Even assuming plaintiffs were correct, such a trust relationship would not exist prior to and apart from the bad action of the alleged trustee, Taylor. Plaintiffs' contentions regarding Section 523(a)(4) are denied.

**Related to § 523(a)(6):**

55. Debts for willful and malicious injury by a debtor to another entity or to the property of another entity are nondischargeable. 11 U.S.C. § 523(a)(6).

56. Willful and malicious injury does not reach negligent or reckless actions. *Kawaauhau v. Geiger*, 523 U.S. 57, 63-64 (1998). The debtor's conduct must rise to the level of an "intentional tort," that is, the debtor intended to deliberately injure the victim. *Id.* at 62.

57. Under the Fifth Circuit test, "the debtor must commit an intentional or substantially certain injury in order to be deprived of a discharge." *In re Williams*, 337 F.3d 504, 509 (5th Cir.2005)(quoting In re Miller, 157 F.3d 598, 606 (5th Cir. 1998).

58. Plaintiffs urge that their loans should not be dischargeable under Section 523(a)(6) because Taylor: (1) intended to cause a loss of their loans by directing their funds to other projects than the one to which they intended to lend their money; (2) Taylor paid himself fees from his IOLTA account. Plaintiffs' argument assumes Taylor knew the plaintiffs' loans would be lost from the date the loans were made and intended plaintiffs would lose all their funds. There is no evidence to this effect. Jacobson testified he was authorized by the Taylors to pay himself fees. There is no evidence to the contrary. Plaintiffs' contentions regarding Section 523(a)(6) are denied.

**Tiffany Taylor:**

59. Plaintiffs have failed to prove Tiffany Taylor participated in the Jacobson Group projects, in TWT Mortgage Group, or elicited plaintiffs' loans in any manner. There is no evidence that Tiffany Taylor worked for her husband's law firm. The Fifth Circuit case cited by plaintiffs is factually distinct because there the wife was a partner in business with her husband who committed the fraudulent actions. *Luce*

*v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1283 (5th Cir.1992).

**Conclusion**

Accordingly, the Court finds that Tiffany Wignall Taylor is entitled to a discharge and Todd Taylor is not discharged from plaintiffs' debts because his actions and representations violated Section 523(a)(2). Counsel for plaintiffs is directed to prepare and file a final judgment which sets out the losses of each plaintiff.

Signed this *15th* day of January, 2014 at Houston, Texas.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE